UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSE WILFREDO FUENTES-CRUZ,

Petitioner,

- against -

TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, *et al.*,

Respondents.

**MEMORANDUM DECISION AND ORDER**

26-cv-4257 (BMC)

**COGAN**, District Judge.

Petitioner Jose Wilfredo Fuentes-Cruz, a Honduran national, seeks a writ of habeas corpus under 22 U.S.C. § 2241, ordering his immediate release from U.S. Immigration and Customs Enforcement ("ICE") detention. For the following reasons, the petition is denied.

**BACKGROUND**

Petitioner entered the United States in October 1998. Shortly thereafter, United States Border Patrol encountered petitioner, found him inadmissible, and served him with a Notice to Appear ("NTA"). The Executive Office for Immigration Review ("EOIR") then commenced removal proceedings. In November 1998, petitioner failed to appear for a master calendar hearing, and the immigration court issued an *in absentia* removal order. Two months later, Honduras was designated for the Temporary Protected Status ("TPS") program. See 64 F.R. 524-02, 1999 WL 1703 (Jan. 5, 1999); see also 8 U.S.C. § 1254a(b)(1).

Petitioner then applied and was approved for TPS, which barred respondents from removing him to Honduras. See id. § 1254a(a)(1)(A). In October 2006, ICE placed the petitioner on an Order of Supervision ("OSUP"). Honduras was redesignated for the TPS

program each year, and petitioner correspondingly reregistered for TPS. However, on April 9, 2025, U.S. Citizenship and Immigration Services terminated petitioner's TPS.[1] See id. § 1254a(c)(3) (standards for "[w]ithdrawal of temporary protected status").

On July 7, 2026, petitioner reported to 26 Federal Plaza in accordance with his OSUP. ICE determined that petitioner (1) had an outstanding final order of removal, (2) had a valid Honduran passport that expires in February 2035, and (3) no longer had TPS.

Assistant Field Officer Darius L. Robinson approved the ICE Form 71-091, Notice of Revocation of Release ("NOR"). The NOR stated that petitioner's OSUP was revoked pursuant to 8 C.F.R. § 241.4(l) because ICE "has the ability and means to effectuate [petitioner's] removal." The NOR also stated that petitioner would have an informal interview to respond to the reasons for revocation.

After Officer Robinson issued the NOR, Detention Officer Catarina Canaletti served the NOR on petitioner and used a Spanish interpreter to translate the NOR. Petitioner refused to sign the NOR. Officer Canaletti then conducted an informal interview of petitioner. Following the interview, ICE issued a Form I-205, Warrant of Removal/Deportation.

Petitioner was detained pursuant to the I-205 and transferred to Delaney Hall Detention Facility in Newark, New Jersey. On July 15, 2026, petitioner was transferred to Metropolitan Detention Center ("MDC") in Brooklyn, New York, where he remains today.

**LEGAL STANDARD**

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Ozturk v. Hyde, 136 F.4th 382,

---

[1] A few months later, Honduras was removed from the TPS program entirely. See 90 F.R. 30089-01, 2025 WL 1865567 (July 8, 2025) ("The designation of Honduras for TPS is terminated effective at 11:59 p.m., local time, on September 8, 2025.").

393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

**DISCUSSION**

Petitioner raises two challenges to his detention. He argues that ICE violated his due process rights when it (1) revoked his OSUP; and (2) subsequently detained him. The Court construes petitioner's arguments liberally because petitioner is proceeding *pro se*. See Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (*pro se* pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest" (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)). Before addressing the merits of petitioner's claims, the Court discusses jurisdiction, which respondents contest.

## I. Subject Matter Jurisdiction[2]

Respondents argue that this Court lacks jurisdiction because the petition is an indirect challenge to petitioner's removal order. Respondents cite Sections 1252(a)(5), 1252(b)(9), and 1252(g) as bases for this Court's lack of jurisdiction.

[2] Petitioner's stepdaughter, Mirian Stephanie Contreras Zaldivar, brings this action as "next friend" because petitioner is detained at MDC. Ms. Contreras Zaldivar has "provide[d] an adequate explanation" as to "why the real party in interest cannot appear on his own behalf to prosecute the action" (his detention). Doe v. Hochul, 130 F.4th 165, 177 (2d Cir. 2025) (citing Whitmore v. Arkansas, 495 U.S. 149, 163 (1990)). The Court is also persuaded that Ms. Contreras Zalidvar is "truly dedicated to the best interests of" petitioner as his stepdaughter. Id. The requirements for "next friend" standing are therefore satisfied.

**A. Sections 1252(a)(5) and 1252(b)(9)**

Section 1252(a)(5) "preclude[s] the district court's entertaining of a direct challenge to a removal order." Delgado v. Quarantillo, 643 F.3d 52, 55 (2d Cir. 2011). In Delgado, the Second Circuit held that "section 1252(a)(5)'s jurisdictional bar applies equally to preclude . . . an indirect challenge." Id.

Section 1252(b)(9), known as the "zipper clause," "is meant to 'consolidate judicial review of immigration proceedings into one action in the court of appeals." Guerrero-Lasprilla v. Barr, 589 U.S. 221, 223 (2020) (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 313 (2001)). Whether this Court nevertheless has jurisdiction over a habeas petition challenging immigration-related detention "turn[s] on the substance of the relief that a plaintiff is seeking." Delgado, 643 F.3d at 55. If the relief a petitioner seeks is essentially to prevent his removal, then petitioner is challenging his removal order, in which case this Court lacks jurisdiction.

Here, petitioner challenges the manner in which ICE revoked his OSUP and the manner in which ICE detained him. See Lin v. Francis, No. 25-cv-10001, 2025 WL 3751855, at *3 (S.D.N.Y. Dec. 29, 2025) (collecting cases); Ceesay v. Kurzdorfer, 781 F. Supp. 137, 152 (W.D.N.Y. 2025) ("[D]istrict courts in this circuit have distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not."). Interpreting section 1252(b)(9) to bar this type of relief "would lead to staggering results." Jennings v. Rodriguez, 585 U.S. 281, 293 (2018); see Ozturk, 136 F.4th at 401 ("Construing an independent constitutional challenge to detention as necessarily implying a challenge to removal would lead to what Jennings called an 'absurd' result."). In short, "petitioner independently challenges the constitutionality of his

detention, not the underlying removal order," Singh v. Quarantillo, No. 25-cv-6392, 2026 WL 32579, at *2 (E.D.N.Y. Jan. 6, 2026), and this Court therefore has jurisdiction to decide the petition.

**B. Section 1252(g)**

Section 1252(g) likewise does not strip this Court of jurisdiction. "As both the Supreme Court and [the Second Circuit] have explained, § 1252(g)'s bar on jurisdiction is 'narrow.'" Ozturk, 136 F.4th at 398 (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)). "Claims of unlawful detention do not fall within the meaning of § 1252(g) merely because they arise in a 'but-for sense' from, or 'relate to,' a decision by immigration authorities to execute a removal order." Lin, 2025 WL 3751855, at *2. Again, petitioner does not challenge the execution of his removal order. He challenges the way his OSUP was revoked and the way he is currently detained. Those are "independent constitutional challenge[s]," Ozturk, 136 F.4th at 401, not indirect challenges to his removal.

**II. Petitioner's Claims**

**A. Revocation of OSUP**

Petitioner argues that his detention is not statutorily authorized because ICE failed to comply with the requirements of 8 C.F.R. § 241.4 when it revoked his OSUP.[3] Specifically, petitioner argues that (1) his OSUP was revoked by an ICE official without proper authority to do so under Section 241.4(l)(2); and (2) he was not afforded an informal interview and an

[3] Although respondents do not appear to contest this, the Court notes that based on the current record, petitioner's OSUP could not be revoked under 8 C.F.R. § 241.13. The Government may revoke an OSUP "pursuant to Section 241.13(i) only if ICE issued [the] OSUP under Section 241.13's 'special review procedures.'" E.M.M. v. Almodovar, No. 25-cv-8212, 2025 WL 3077995, at *5 (S.D.N.Y. Nov. 4, 2025).

opportunity to respond to the reasons for revocation under Section 241.4(l)(1).[4] Petitioner's arguments do not succeed.

First, petitioner cites several cases in support of his argument that only the Executive Associate Director or a district director may revoke an OSUP under 8 C.F.R. § 241.4(l)(2). See, e.g., Zhang v. Genalo, 814 F. Supp. 3d 307, 321-22 (E.D.N.Y. 2025); E.M.M., 2025 WL 3077995, at *6; Mohammad v. Kurzdorfer, No. 26-cv-132, 2026 WL 657460, at *6 (W.D.N.Y. March 9, 2026). But those cases were decided before June 10, 2026, on which date the Acting Executive Associate Director delegated his authority to revoke OSUPs under 8 C.F.R. § 241.4 to assistant field officers.[5] Because authority to revoke OSUPs has been delegated to assistant field officers, Assistant Field Officer Robinson's revocation of petitioner's OSUP was statutorily authorized. See 8 C.F.R. § 241.4(c)(4) (allowing the Executive Associate Commissioner (*i.e.*, the Executive Associate Director) to delegate his powers under the regulation).

Second, respondents have represented that petitioner was afforded an informal interview and opportunity to respond on July 7, 2026, the day his OSUP was revoked. He was also provided with a Spanish interpreter. This case is therefore distinguishable from Zhang, 814 F. Supp. at 327-28, in which the court found that petitioner was denied due process because he may not have had an interview or been given an interpreter. Accordingly, there was no due process violation based on the revocation of petitioner's OSUP.

---

[4] It is not clear from the petition whether petitioner is challenging the statutory authorization for his detention on the basis that he was not provided with an informal interview. The Court construes the petition liberally and assumes that petitioner challenges his detention on this basis because the petition references the informal interview requirement and states that ICE did not afford petitioner "meaningful notice or opportunity to be heard."

[5] This delegation was made pursuant to ERO Delegation Order No. DO99-004 (June 10, 2026), which does not appear to be a publicly available document. However, a copy of the document was filed by respondents, and petitioner does not contest its accuracy or authenticity.

**B. Detention**

Detention of noncitizens subject to final orders of removal is governed by 8 U.S.C. § 1231. Wang, 320 F.3d at 145. Section 1231 provides that once a removal order is final, "the Attorney General shall remove the alien from the United States within a period of 90 days," 8 U.S.C. § 1231(a)(1)(A), and during the removal period, "the Attorney General shall detain the alien," id. § 1231(a)(2)(A). "After the 90-day removal period expires, section 1231(a)(6) provides that [certain] classes of persons 'may be detained beyond the removal period.'" Gualpa-Mizhquiri v. Francis, 26-cv-156, 2026 WL 396081, at *2 (S.D.N.Y. Feb. 12, 2026) (citing 8 U.S.C. § 1231(a)(6)).

"The petitioner's removal order became administratively final . . . the day the [immigration judge] issued the petitioner's removal order *in absentia*." Cayamcela Caceres v. Mullin, No. 26-cv-3759, 2026 WL 2111017, at *4 (E.D.N.Y. July 22, 2026). Here, the 90-day period following the issuance of the removal order has long passed; the immigration court ordered petitioner's removal in November 1998. Nonetheless, 8 U.S.C. § 1231(a)(6) allows respondents to detain noncitizens who are inadmissible (*e.g.*, petitioner) beyond the 90-day period.

"Petitioner's detention is thus statutorily authorized, but it still must comport with applicable due process guarantees." Romero v. Noem, No. 26-cv-1884, 2026 WL 775847, at *6 (S.D.N.Y. March 19, 2026). Detention under section 1231(a)(6) is presumptively reasonable for six months. Zadvydas v. Davis, 533 U.S. 678, 701 (2001). Here, petitioner has been detained for less than three months, and thus the duration of his detention is "presumptively reasonable." Mathieu v. Dep't of Homeland Sec., 26-cv-4630, 2026 WL 1747084, at *4 (S.D.N.Y.

June 17, 2026) (citing Zadvydas, 533 U.S. at 701). Accordingly, there is no due process violation based on petitioner's ongoing detention.

**CONCLUSION**

For the reasons set forth above, the petition is denied.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
September 16, 2026